# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LUIS U. GALVAN-MENA, ) <br> ) <br> Defendant. ) | Case No. 08-CR-30019-MJR |

## ORDER

**REAGAN, District Judge:**

### A. Introduction

Defendant Mena was indicted on January 25, 2008 for possession with the intent to distribute 5 kilograms or more of cocaine, a violation of 21 U.S.C. § 841(a)(1) (Doc. 1). On November 17, 2008, Mena moved to suppress statements and evidence (Doc. 18). Mena claims that he did not knowingly and voluntarily consent to the search of his vehicle, as Spanish is his first language and officers spoke to him only in English. Thus, he asks the Court to suppress any physical evidence obtained in the course of that search. Additionally, Mena claims that he never knowingly and voluntarily waived his *Miranda* rights, despite the existence of a signed waiver, because the form was presented entirely in English. As a result, he seeks suppression of any statements he made while in custody.

After giving the Government time to respond (Doc. 22), the Court held a hearing on the motion to suppress on December 19, 2008. The Government presented testimony from four police officers who participated in Mena's arrest and/or interviews while in custody. Mena did not present any testimony or evidence.

Having fully considered the parties' arguments and the officers' testimony, the Court

hereby **DENIES** Mena's motion to suppress (Doc. 18).

### B. Factual Background

On the morning of December 14, 2007, Mena was driving a delivery truck hauling toilets and related items. At 5:30 a.m., Effingham County Sheriff's Deputy Robert Rich stopped Mena's truck for improper lane usage. Deputy Rich questioned Mena and examined his bills of lading and logbook.[1] These documents (Exhs. 1, 2A, & 2B) contain English instructions and include responsive entries, signed by Mena.

Deputy Rich asked Mena a number of general questions in English. Mena responded in English, stating that this was his first time driving for his employer. Deputy Rich noted that Mena appeared nervous, as he could not sit still and his hands shook while passing documents. Deputy Rich inquired as to whether there was anything illegal in the truck. According to Deputy Rich's testimony, the Defendant refused to answer.[2]

At that point, Deputy Rich sought consent to search the truck and trailer, and Mena replied, "O.K." Mena then helped unlock the back of the truck as Deputy Deters arrived upon the scene. Deputy Deters searched the inside of the trailer while Deputy Rich walked a drug dog around the truck. The dog made an unusual reaction toward the rear of the vehicle. The reaction was unusual in the sense that Deputy Rich had never witnessed such a response from the dog, but he believed that the dog was alerting to the presence of narcotics.

In the course of his search, Deputy Deters ultimately located packages that appeared

---

[1] Mena does not challenge the stop itself, nor does he argue that the questioning extended the traffic stop so as to render it an unreasonable seizure.

[2] In his motion, Mena notes that this account conflicts with the officer's affidavit in support of the December 14, 2007 complaint, which states that Mena said there was nothing illegal in the truck.

2

to be narcotics. A field test of the substance tested positive for cocaine. The truck was towed for a more thorough search, and ultimately, approximately 70 kilograms of cocaine were recovered.

Mena was arrested and taken to the Effingham County Jail, where Deputy Deters read Mena his *Miranda* rights at approximately 10:12 a.m. Deputy Deters used the Effingham County Sheriff's Office's standard form explaining these rights (Exh. 3; Doc. 22-2). As he read each line, Deputy Deters obtained a verbal acknowledgment that Mena understood them and asked Mena to initial each line. Deputy Deters then asked Mena to read the section entitled "Acknowledgment and Waiver of Rights" at the bottom of the form. Mena did so and signed the form, which was entirely in English. Officer Steven Langhorst was also present and signed the form indicating that he witnessed the procedure.

Officers Hosp and Regal of the Fairview Heights Resident Office DEA then interviewed Mena in English. Mena responded only in English and made incriminating statements. When that interview concluded, Deputies Deters, Rich, and another officer transported Mena to the Fairview Heights, Illinois DEA office. During that trip, Mena engaged in small talk with the officers and made some additional incriminating statements in response to the officers' questions. Again, the entire conversation was in English. Deputy Deters kept handwritten notes of this conversation.

In his motion, Mena states that he was born in Mexico. He claims that Spanish is his first language, and he does not speak English very well. Additionally, Mena claims that he has diabetes and was not feeling well at the time he signed the *Miranda* waiver.

### C. Analysis

### 1. Search of the Vehicle

First, Mena seeks suppression of all physical evidence recovered from the truck, arguing that he could not have voluntarily consented to the search, since he does not understand

3

English very well. The Fourth Amendment guarantees the right against unreasonable searches. Voluntary consent to search a vehicle renders a search reasonable under the Fourth Amendment. ***Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).** The Government bears the burden of proving by a preponderance of the evidence that any consent was freely and voluntarily given. ***United States v. Sandoval-Vasquez*, 435 F.3d 739, 744 (7th Cir. 2006).** In determining whether consent was voluntary, the Court considers the totality of the circumstances, including the following factors:

> (1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent; (4) whether his consent was immediate, or was prompted by repeated requests by the authorities; (5) whether any physical coercion was used; and (6) whether the individual was in police custody when he gave his consent.

***United States v. Figueroa-Espana*, 511 F.3d 696, 704–05 (7th Cir. 2007).**

Mena's only argument that his consent was not voluntary stems from his claim that he does not understand English well enough to understand what was being asked of him. However, four officers testified otherwise, and the Court finds these officers' testimony to be credible. Specifically, they testified that in the course of Mena's arrest and subsequent interview, the officers had conversations with Mena in English, all of his responses were in English, and all of his responses were appropriate and relevant to the questions being asked. The officers also testified that Mena never indicated that he could not understand English. This testimony indicates that Mena understood English well enough to understand Deputy Rich's request and consent to a search.

Additionally, Deputy Rich testified that when he asked Mena for consent to search the truck, he immediately replied, "O.K." There is no indication that Mena wavered or was repeatedly asked for consent. There is also no evidence that Mena was physically coerced.

Defendant's position that he did not understand English is belied by the fact that over-the-road truck drivers, like him, are required to keep logs of their activities to ensure compliance with Department of Transportation regulations. Defendant completed his log books with no apparent difficulty despite the fact they are in English. Similarly, the bill of lading for the trucks' goods was in English and signed by the Defendant. Additionally, the DEA form that agents complete as part of their investigation required cooperative verbal and written responses of the Defendant and could not have been appropriately completed had the Defendant not understood the English language.

Mena argues that a roadside video recording of the traffic stop would provide a clear and undisputable account of any verbal exchanges with Deputy Rich. While that may be true, the absence of such a recording is not enough to convince the Court that Mena did not understand the request to search his truck.

The totality of circumstances surrounding Mena's consent, accompanied by the credible testimony of the officers, indicates that Mena understood English and voluntarily consented to a search of the truck. Accordingly, the Court **DENIES** Mena's motion to suppress the physical evidence obtained from the truck.

**2. Waiver of *Miranda* Rights**

Next, Mena asks the Court to suppress any and all incriminating statements he made. The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." In order to protect a suspect's Fifth Amendment privilege against self-incrimination, *Miranda* warnings must be given to suspects prior to custodial interrogation. ***Miranda v. Arizona*, 384 U.S. 436 (1966).** After *Miranda* warnings are issued, incriminating statements may be used against a suspect who voluntarily waived those rights. ***United States v.***

5

***Murdock*****, 491 F.3d 694, 700 (7th Cir. 2007).** The burden is on the Government to prove that any such "statement was made following a voluntary, knowing, and intelligent waiver of *Miranda* rights." ***United States v. Jackson*****, 300 F.3d 740, 748 (7th Cir. 2002).**

The Seventh Circuit has explained that in determining whether a defendant's *Miranda* rights were voluntarily and knowingly waived, a district court should consider

> such factors as defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion.

*Id.*

As already noted, the Government presented testimony from four officers who interacted with Mena on the date in question. The officers' questions were entirely in English, as were all of Mena's responses, and Mena never indicated that he did not understand English. With respect to Mena's waiver of *Miranda* rights, Deputy Deters testified that he obtained both verbal and written acknowledgments from Mena confirming that he did in fact understand his rights. Indeed, Mena initialed each line so as to convey that he understood his rights. Additionally, Deputy Deters asked Mena to read and sign the "Acknowledgment and Waiver of Rights" portion of the form. Deputy Deters testified that Mena read the form and signed his name, without ever stating that he was having trouble understanding. Finally, Officer Langhorst signed the form as a witness, corroborated Deputy Deters' testimony, and stated that Mena never told the officers that he did not understand. Rather, at all times, Mena responded in English with answers that were appropriate to the questions he was asked. The Court finds the officers' account to be credible and finds that Mena understood English well enough to comprehend his *Miranda* rights and waive them.

Mena also argues that due to his diabetes, his physical and mental condition was compromised to such an extent that he could not knowingly and voluntarily waive his rights. Mena

6

notes that nearly five hours passed from the initial traffic stop until his *Miranda* waiver, during which time he had nothing to eat and did not take any medication. In his motion, Mena claims that when he signed the waiver form, he was light-headed and did not feel well. He also claims that his condition impacted his mental state. However, the officers' testimony, which the Court finds credible, was that Mena appeared coherent and alert at all times, including the periods before and after he signed the waiver. Additionally, the officers testified that he appeared to understand everything that was discussed and responded accordingly. The officers also testified that at no time did Mena indicate that he was diabetic, that he was not feeling well, or that he needed to eat, take medication, or see a doctor. Finally, there is no evidence that the officers physically coerced Mena to waive his rights.

Again, Mena argues that a video recording of any waiver of rights and subsequent interviews would provide a clear and undisputable account of the circumstances under which Mena waived his rights. While such steps may be prudent, their absence in this case is not sufficient to overcome the evidence that Mena did in fact understand his rights and subsequently waived them.

Accordingly, the Court finds that Mena knowingly and voluntarily waived his *Miranda* rights and **DENIES** Mena's motion to suppress statements.

### C. Conclusion

For the reasons fully explained above, the Court hereby **DENIES** Mena's motion to suppress physical evidence and statements (Doc. 18).

**IT IS SO ORDERED.**

**DATED this 29th day of December 2008.**

                                                 **s/ Michael J. Reagan**
                                                 **MICHAEL J. REAGAN**
                                                 **United States District Judge**